IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LADDIE C., on behalf of his minor son, JOSHUA C., | CV. NO. 08-00309 SOM/BMK |
| Plaintiff, | ORDER AFFIRMING IN PART ADMINISTRATIVE HEARINGS OFFICER'S JUNE 6, 2008 ORDER AND REMANDING IN PART |
| vs. | |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII | |
| Defendant. | |

ORDER AFFIRMING IN PART ADMINISTRATIVE
HEARINGS OFFICER'S JUNE 6, 2008 ORDER AND REMANDING IN PART

I.       INTRODUCTION.

Joshua C. is a 13-year-old boy with autism.  Joshua is entitled by law to receive special education services from the State of Hawaii.  In that regard, Joshua attends Variety School, a private special education school, where he has been for the last seven years.  Joshua's father, Laddie C., challenges Joshua's individualized education plan ("IEP"), developed by the State of Hawaii's Department of Education ("DOE").  The IEP provides for Joshua to be moved to Stevenson Middle School, a public school in his neighborhood, where he would be taught in a "self-contained" environment, that is, a single classroom with a controlled environment, rather than in a different classroom for each subject, like most of the student body.  Joshua would,

however, be exposed to larger groups of students in certain activities.

Laddie C. timely filed a due process request to halt the proposed move. An evidentiary hearing was held from April 29 to 30, 2008, before an administrative hearings officer. The hearings officer issued a decision upholding the proposed IEP on June 6, 2008. Joshua's father now appeals from the hearings officer's order.

II.      LEGAL BACKGROUND AND STANDARD.

The Individuals with Disabilities in Education Act ("IDEA") requires any state receiving federal financial assistance for special education to implement a policy that ensures that every disabled child in that state who has a disability is provided with a free appropriate public education ("FAPE") designed to meet the unique needs of that disabled child.[1] 20 U.S.C. § 1412. See Kletzelman v. Capistrano Unified Sch. Dist., 91 F.3d 68, 69 (9th Cir. 1996) (the IDEA "confers upon disabled students an enforceable substantive right to public education in participating States, and conditions federal financial assistance upon a State's compliance with substantive and procedural goals of the Act") (citations omitted); Poolaw v. Bishop, 67 F.3d 830, 834 (9th Cir. 1995).

------

[1]There is no dispute that Hawaii receives federal financial assistance for special education to implement a policy ensuring a FAPE to every disabled child.

2

The FAPE required by the IDEA must be tailored to the unique needs of the disabled child by means of an IEP.  Board of Educ. of Henry Hudson Central Sch. Dist. v. Rowley, 458 U.S. 176, 181 (1982); see 20 U.S.C. § 1401(14) (an IEP is "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with section 614(d).").

Specifically, FAPE means:

> special education and related services that–
> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 614(d).

20 U.S.C. § 1401(9).

A FAPE need not be the absolute best or "potential-maximizing" education.  Instead, states are obligated to provide a basic floor of opportunity through a program individually designed to provide educational benefits to the disabled child.  Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1498 (9th Cir. 1996); Ash v. Lake Oswego Sch. Dist., 980 F.2d 585, 587 (9th Cir. 1992).  The "basic floor of opportunity" provided by the IDEA consists of access to specialized instruction and related services.  Seattle Sch. Dist., No. 1, 82 F.3d at 1500 (quoting

Rowley, 458 U.S. at 201).  The basic floor must be more than a program that produces some minimal academic advancement, which might be only trivial.  Amanda J. v. Clark County Sch. Dist., 267 F.3d 887, 890 (9th Cir. 2001).

A FAPE is accomplished through the development of an IEP for each child.  Ojai Unified Sch. Dist. v. Jackson, 4 F.3d 1467, 1469 (9th Cir. 1993).  The IEP is crafted annually by a team that includes a representative of the local educational agency, the child's teacher and parents, and, in appropriate cases, the child.  20 U.S.C. § 1414(d); see County of San Diego v. California Special Educ. Hearing Office, 93 F.3d 1458, 1461 (9th Cir. 1996) ("Crafted annually by the child's teacher, her parents, a representative of the school district, and, where appropriate, the child, the IEP ensures that the child's education is tailored to her individual needs"); Ojai, 4 F.3d at 1469.

The IEP should contain: a statement of the child's present levels of educational performance; a statement of measurable annual goals; a statement of the special education and related services and supplementary aids and services to be provided to the child and of the program modifications or supports for school personnel that will be provided to the child; an explanation of the extent, if any, to which the child will not participate with nondisabled children in regular classes and

4

other activities; a statement of any individual modifications in the administration of state or district assessments of student achievement; the projected date for the beginning of the services and modifications and the anticipated frequency, location, and duration of those services and modifications; and, beginning at age fourteen, an annually updated statement of the transition service needs of the child under the applicable components of the child's IEP that focuses on the child's course of study.  20 U.S.C. § 1414(d)(1)(A).

Additionally, the IDEA requires states to develop procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a FAPE.  20 U.S.C. § 1415(a).  These procedures include an opportunity to present complaints relating to the identification, evaluation, or educational placement of a child, or the provision of a FAPE to that child.  20 U.S.C. § 1415(b)(6).  When a complaint is made pursuant to § 1415(b)(6), "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing."  20 U.S.C. § 1415(f)(1).  At this hearing, the DOE has the burden of proving that it complied with the IDEA.  See Seattle Sch. Dist., No. 1, 82 F.3d at 1498 ("The School District had the burden of proving compliance with the IDEA at the administrative hearing, including the appropriateness of its

evaluation, 34 C.F.R. § 300.503(b), and its proposed placement
for A.S."); Clyde K. v. Puyallup Sch. Dist., 35 F.3d 1396, 1398
(9th Cir. 1994).

Any party aggrieved by a decision of a due process
hearings officer may appeal the findings and decision to the
state educational agency, 20 U.S.C. § 1415(g), or appeal the
findings and decision to any state court or a United States
district court.  20 U.S.C. § 1415(i)(2).  Joshua's parents have
appealed the  hearings officer's findings and decision to this
court.

The burden in this court is on the party challenging
the administrative ruling.  Seattle Sch. Dist., No. 1, 82 F.3d at
1498; Clyde K., 35 F.3d at 1399.  However, judicial review of
IDEA cases differs substantially from judicial review of other
agency actions, in which courts generally are confined to the
administrative record and are held to a highly deferential
standard of review.  Ojai, 4 F.3d at 1471.  Courts review de novo
the appropriateness of a special education placement under the
IDEA.  County of San Diego v. California Special Educ. Hearing
Office, 93 F.3d 1458, 1466 (9th Cir. 1996).  Nevertheless, when
reviewing state administrative decisions, courts must give due
weight to judgments of education policy.  County of San Diego, 93
F.3d at 1466; Ojai, 4 F.3d at 1472.  The IDEA does not empower a
court to substitute its own notion of sound educational policy

for that of the school authorities that the court reviews.
County of San Diego, 93 F.3d at 1466; Ojai, 4 F.3d at 1472;
Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1311 (9th Cir.
1987).  In recognition of the expertise of the administrative
agency, the court must consider the findings carefully and
endeavor to respond to the  hearings officer's resolution of each
material issue.  After such consideration, the court is free to
accept or reject the finding in whole or in part.  County of San
Diego, 93 F.3d at 1466; Gregory K., 811 F.2d at 1311.  Despite
its discretion to reject the administrative findings after
carefully considering them, a court is not permitted simply to
ignore the administrative findings.  County of San Diego, 93 F.3d
at 1466; Gregory K., 811 F.2d at 1311.

III.     ANALYSIS.

Procedural compliance is essential to ensuring that
every child receives a FAPE.  Amanda J., 267 F.3d at 890.  The
issue before this court is whether the IDEA was violated and a
FAPE denied to Joshua as a result of the process the IEP team
used in deciding to move him from Variety School to Stevenson
Middle School.

The Ninth Circuit has recognized that not every
procedural violation is sufficient to support a finding that a
child was denied a FAPE.  Amanda J., 267 F.3d at 892.  A FAPE is
denied to a child, however, when procedural inadequacies result

in the loss of educational opportunity, seriously infringe on the parents' opportunity to participate in the IEP formulation process, or cause a deprivation of educational benefits.  Id.

Joshua's IEP team met four times to develop the IEP adopted on June 20, 2007: on April 17, May 10, May 25, and June 20, 2007.  It appears there were 21 attendees at the first meeting, including Laddie C. (Joshua's father), Joshua's Intensive Instructional Services Consultant, his reading tutor, his school's program director, his special education teacher, a school psychologist, two resource teachers for autism, and a resource teacher for assistive technology, among others.  At the second and third meetings, representatives from Stevenson Middle School and the Honolulu District school system were present as well as a parent consultant, in addition to representatives from Variety School.  At the fourth meeting, which took place after the summer break had begun, the Variety School teacher, the Variety School program director, and Joshua's tutor were not present.

The IEP team considered and rejected continuing Joshua's placement at Variety School, deeming a transfer to a public school appropriate to develop his skills among typical, age-appropriate peers.  The resulting IEP, adopted on June 20, 2007, outlined a plan for Joshua to transfer from Variety School to Stevenson Middle School for the 2007-2008 school year.

8

Laddie C. alleges that the following procedural violations in the placement decision resulted in a denial of a FAPE: (1) lack of parental involvement, (2) failure to complete an evaluation prior to making a substantial change, and (3) failure to include people with knowledge of Joshua in the process of deciding to transfer him.

Laddie C. is understandably concerned about placing Joshua in a productive learning environment, and he has unique firsthand knowledge about his son to contribute to the IEP.  The Ninth Circuit has noted that the procedures that provide for meaningful participation by parents are particularly important. Amanda J., 267 F.3d at 890.  However, the mere existence of a difference in opinion between a parent and the rest of the IEP team is not sufficient to show that the parent was denied full participation in the process, nor that the DOE's determination was incorrect.

Laddie C. claims that the hearings officer disregarded his testimony that his son would not do well in a public school's integrated environment.  Laddie C. also asserts that the testimony of Duane Yee, the director of Variety School, was not given enough weight.  Responding that "the hearings officer did not disregard the testimony of the two witnesses offered by Plaintiffs," the DOE maintains that "Laddie C.'s and Duane Yee's testimony simply failed to carry the day."  Indeed, the record

reflects that neither Laddie C. nor Duane Yee was familiar with
Stevenson Middle School's self-contained facilities, and neither
of them had ever observed Joshua in such a setting.

Mr. Yee opined that, because "it's not his comfort
level to do large groups," Joshua would find a public school like
Stevenson "really overwhelming."  He did not address the prospect
of a fully self-contained classroom.  In fact, Mr. Yee stated
that his understanding of Stevenson was that the students were
required to move from classroom to classroom, and he clearly
based his opinion of the suitability of the school on that
misconception.  Laddie C. also focused on Joshua's ability to
handle large crowds, describing Joshua's behavior in those
circumstances as consisting of "grunting" and "fussing."  Laddie
C. said that, while in these scenarios his son "looks normal and
on most occasions he acts normal," Joshua is nonetheless
uncomfortable.  Ultimately, Laddie C. qualified his opinion about
the unsuitability of Stevenson Middle School as an "assumption."

The DOE has clarified that Joshua's proposed classroom
at Stevenson is fully self-contained, and that Joshua would have
a one-on-one school aide with him at all times.  He would not
change classrooms for each subject until he was deemed ready to
make such a transition, and he would have the benefit of
assistive technology that he is not currently receiving at
Variety School.  None of the testimony provided by Laddie C. or

10

Duane Yee indicates that this environment would be a problem for Joshua, nor that the benefit of the assistive technology or the personal aide would be insufficient to help him cope with his new surroundings.

Furthermore, at Stevenson, Joshua would be able to interact with nondisabled children during recess and school activities.  Socialization with nondisabled children is not possible at Variety School, where all the students receive special education services.  This move is in accordance with IDEA provisions for placing students in the least restrictive environment.  A state must ensure that, "to the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily."  20 U.S.C. § 1412(a)(5)(A).  Hawaii law includes the same requirement.  Haw. Admin. R. § 8-56-43. ("The department shall ensure that to the maximum extent appropriate, all students with a disability . . . are educated with students without a disability.").

Laddie C.'s next charge is that the DOE did not comply with the evaluation requirement contained in 34 C.F.R. § 104.35.

11

However, this regulation applies to cases under section 504 of the Rehabilitation Act, not the IDEA.  The stated purpose of Part 104 of Title 34, Chapter I of the C.F.R., is "to effectuate section 504 of the Rehabilitation Act of 1973, which is designed to eliminate discrimination on the basis of handicap in any program or activity receiving Federal financial assistance."  34 C.F.R. § 104.1.  As the Ninth Circuit has explained, "The FAPE requirements in the IDEA and in the § 504 regulations are, in fact, overlapping but different."  Mark H. v. Lemahieu, 513 F.3d 922, 925 (9th Cir. 2008).  Section 504 provides a private right of action for victims of discrimination.  This is not a civil suit for discrimination under the Rehabilitation Act, but rather a challenge to the proposed IEP change under the IDEA.[2]

_____

[2]Laddie C. cites Cronin v. Board of Education, 689 F. Supp. 197 (S.D.N.Y. 1988), in discussing the requirements for changing a placement.  However, in detailing the procedures that apply, that case conspicuously leaves out any mention of an evaluation requirement:

> The procedural safeguards include the right to examine all relevant records with respect to the identification, evaluation, and educational placement of their handicapped child, prior written notice when an educational agency either initiates or refuses to initiate a change in the child's placement, and an opportunity to have an impartial due process hearing with respect to any complaints parents might have concerning their child's education. 20 U.S.C. § 1415(b)(1), (2). The Act also provides that at the conclusion of the impartial hearing, the aggrieved party can seek further administrative review and, if unsuccessful, can ultimately appeal by filing

As both parties acknowledge, the Rehabilitation Act
applies to all public schools that receive federal assistance.
Its guarantee of equal treatment for disabled students extends to
students like Joshua, who are covered by the IDEA.  However, "the
U.S. DOE's § 504 regulations distinctly state that adopting a
valid IDEA IEP is sufficient but not necessary to satisfy the
§ 504 FAPE requirements."  Id., 513 F.3d at 933; see 34 C.F.R.
§ 104.36 ("Compliance with the procedural safeguards of section
615 of the Education of the Handicapped Act [the predecessor of
the IDEA] is one means of meeting this requirement.").  In
holding the DOE to the requirements of providing a FAPE under the
IDEA, this court simultaneously addresses the standards of the
Rehabilitation Act.  Thus, the DOE was not required to meet
section 504 evaluation requirements separate from development of
a valid IEP under the IDEA.

Finally, Laddie C. alleges that the DOE failed to
ensure that the placement decision was made by people
knowledgeable about Joshua, pursuant to Hawaii Administrative
Rule § 8-56-45(1)(A).  That rule states, "In determining the

---

a civil action in any state or federal court.
20 U.S.C. § 1415(c), (e)(2).

Id. at 21.  The court went on to discuss the "stay-put" provision
of the Act, which Laddie has invoked to keep Joshua at Variety
School during the appeals process.  See 20 U.S.C. § 1415(e)(3).
The case makes no mention of any evaluation requirement for a
change in placement.

13

educational placement of a student with a disability . . . the department shall ensure that the placement decision is made by a group of persons, including the parent, and other persons knowledgeable about the student, the meaning of the evaluation data, and the placement options." See also 34 C.F.R. § 300.116(a)(1) ("In determining the educational placement of a child with a disability . . . each public agency must ensure that the placement decision is made by a group of persons, including the parents, and other persons knowledgeable about the child, the meaning of the evaluation data, and the placement options.")

The final meeting, which took place during the summer break, was attended by two care coordinators, a speech pathologist, an autism consultant, a regular DOE education teacher, a student services coordinator, the vice-principal of Stevenson, a clinical psychologist, and Laddie C. and his parent consultant. Joshua's Variety School teacher and program director and Joshua's tutor were not present. Laddie C. alleges that the placement decision was made at this final meeting, in which the people with firsthand knowledge of Joshua were not present. The DOE maintains that placement options were discussed throughout all of the IEP team meetings, and that several of Joshua's teachers contributed to the decision.

Laddie C. directs this court to Melodee H. v. Dep't of Educ., No. 07-256, 2008 U.S. Dist. LEXIS 39656 (D. Haw. May 13,

2008).  In that case, the court found that the student, Kelii H., was denied a FAPE because of procedural violations.  Notably, when the placement decision was made,

> no one present at the meeting knew Kelii, except the parents; there was no discussion of where Kelii was going to school, and parents were not given any information on . . . the proposed alternative physical location for Kelii's placement offered by DOE.

Id. at *25.

The present case does not come to this court with an administrative record analogous to that in Melodie H.  The record in the present case does not permit the court to determine who participated in Joshua's placement decision.

It is not clear whether anyone at the meeting in which Joshua's placement was decided knew him, outside of Laddie C. and the parent representative.  The hearings officer does not appear to have considered any challenge to the participants in the final meeting.  Indeed, Laddie C. did not assert a violation of Hawaii Administrative Rule § 8-56-45(1)(A) or 34 C.F.R. § 300.116(a)(1) in the Opening Brief he filed with the hearings officer; Laddie C. raised the claim for the first time in the Closing Brief filed in the administrative proceeding.  As a result, there is no clear record on this issue, and there are no factual findings or conclusions of law by the hearings officer on this issue to appeal to this court.  This court recognizes that Laddie C. could arguably be said to have waived the issue.  However, this court

15

believes that, in the IDEA context, the court should construe claims liberally and avoid any crabbed or cramped reading that might disadvantage a child.

The court accordingly remands to the hearings officer the issues of when the placement decision was made, who was involved in that decision, and whether those persons were sufficiently knowledgeable of Joshua's needs to make the decision.  The court asks the hearings officer to examine whether the DOE violated the IDEA in making the placement decision, and if so, if this violation resulted in a denial of a FAPE.

The hearings officer is free to receive new evidence and/or new briefing, but not required to do so.  In remanding this matter, this court imposes no restrictions on procedure or result other than already required by law.  This court is not ruling that the placement decision must be made only at a specific designated meeting after formation of an IEP, as argued by Laddie C.  Nor is this court indicating that the placement decision was integrated with formulation of the IEP over a series of meetings, as contended by the DOE.  The court's concern is rather that it has no administrative finding on such issues. Even recognizing that this court's review is de novo, this court is still supposed to be reviewing the hearings officer's findings and conclusions, not creating them in the first instance.  In the interest of confining itself to review, this court remands this

matter so that the hearings officer may rule on matters not properly presented to him earlier.

IV.       CONCLUSION.

          The court AFFIRMS the rulings of the hearings officer that the DOE did not deny Joshua a FAPE by failing to conduct an evaluation of Joshua and did not exclude Laddie C. from participating in the creation of the IEP.  The court REMANDS to the hearings officer the issues of when the placement decision was made, whether persons knowledgeable about Joshua made that decision, and whether a FAPE was consequently denied.

          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, March 27, 2009.



                              /s/ Susan Oki Mollway
                              Susan Oki Mollway
                              United States District Judge


Laddie C. v. DOE; Civil No. 08-309 SOM/BMK; ORDER AFFIRMING IN PART ADMINISTRATIVE HEARINGS OFFICER'S JUNE 6, 2008 ORDER AND REMANDING IN PART.